1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRYWAN KING, | Case No. 1:23-cv-00351-SAB |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL, DIRECTING THE CLERK OF THE COURT TO ENTER JUDGMENT IN FAVOR OF PLAINTIFF KRYWAN KING AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND TO CLOSE THIS ACTION |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| | (ECF Nos. 12, 16, 17) |

## I.

## INTRODUCTION

Krywan King ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff requests the decision of Commissioner be vacated and the case be remanded for further proceedings, arguing the ALJ erred in the residual functional capacity determination by determining his mental functioning without any medical opinion and by failing to consider lay witness testimony and

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes. (See ECF Nos. 7, 10, 11.)

1

seeks remand for further proceedings.

For the reasons explained herein, Plaintiff's Social Security appeal shall be granted.

## II.

## BACKGROUND

### A.    Procedural History

Plaintiff protectively filed an application for a period of disability and disability insurance benefits and an application for supplemental security income on July 30, 2018.  (AR 95, 96.) Plaintiff's applications were initially denied on February 19, 2019, and denied upon reconsideration on May 29, 2019.  (AR 123-27, 133-36.)  Plaintiff requested and received a hearing before Administrative Law Judge Jan Leventer ("the ALJ").  Plaintiff failed to appear for a hearing scheduled for July 29, 2021, because he was in the hospital.  (AR 72-6.)  Plaintiff appeared for a telephonic hearing on November 29, 2019.  (AR 38-71.)  On December 10, 2021, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 14-32.)  On January 3, 2023, the Appeals Council denied Plaintiff's request for review.  (AR 1-3.)

### B.    The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, January 3, 2023:

1. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2020.

2. Plaintiff has not engaged in substantial gainful activity since July 30, 2018, the alleged onset date.

3. Plaintiff has the following severe impairments: blindness of the right eye due to trauma, calluses of both feet, and schizoaffective disorder.

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

5. After careful consideration of the entire record, the ALJ found that Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except he can lift, carry, push, and pull twenty pounds occasionally and

ten pounds frequently.  He can sit, stand, and walk six hours of an eight-hour workday.  He can see dangerous objects at work, such as boxes on the floor and doors that are open.  He can occasionally read normal-size print.  He cannot drive a motor vehicle.  He cannot work at hazardous heights, or use moving machinery or vibration equipment.  He can never climb ladders, ropes, or scaffolds.  He can perform simple, routine tasks, but not at a production rate pace.  He can maintain attention and concentration for extended periods throughout the workday.  He can frequently interact with supervisors, coworkers, and the public.  He can frequently adapt to stress and change in the workplace.

6. Plaintiff is unable to perform any past relevant work.

7. Plaintiff was born on June 13, 1981, and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. Plaintiff has a limited education.

9. Transferability of job skills is not an issue in this case because Plaintiff's past relevant work is unskilled.

10. Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

11. Plaintiff has not been under a disability, as defined in the Social Security Act, from July 30, 2018, through the date of this decision.

(AR 19-31.)

## III.

## LEGAL STANDARD

### A.    The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.

> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.

> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

   Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are

---

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

not severe.   20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[4]   A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.   See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.   20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).   To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE.   See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).   "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' " Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

**B.   Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g).   In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).   "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055–56. Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

**IV.**

**DISCUSSION AND ANALYSIS**

Plaintiff raises two issues on appeal: (1) the ALJ erred in determining his mental residual functional capacity assessment because it is without the support of a medical opinion; and (2) the ALJ erred by not considering lay witness testimony.

### A.      Residual Functional Capacity Assessment

Plaintiff argues that the ALJ committed legal error because she determined Plaintiff's mental capacity without any medical opinion. Plaintiff contends that the ALJ rejected the psychologist

consultative examiner's opinion because it was inconsistent with the medical evidence and was issued prior to Plaintiff being treated at Fresno Behavioral Health.  Further, Plaintiff asserts that the two non-examining agency physicians stated there was insufficient evidence to evaluate a mental impairment.  (Pl.'s Opening Brief in Support of Request for Judicial Remand ("Mot.") 21,[5] ECF No. 12.)  Plaintiff states that the ALJ is the only one who reviewed his mental health records beginning in 2020, and that without any physician opinion to support the ALJ's conclusions the RFC determination lacks basis.  (Mot. 21-22.)  Plaintiff argues that the error was particularly egregious here because his symptomatic schizophrenia disorder worsened during the disability period requiring two hospitalizations.  Plaintiff contends the error is not harmless as the hypothetical included the ability to maintain attention and concentration throughout the workday and the VE opined that if an individual was limited to maintaining attention and concentration for two-thirds of a workday, the jobs identified would be eliminated.  (Mot. 22.)

Defendant counters that Plaintiff had the burden to prove disability and forfeited the argument that the record was not complete by failing to raise the issue before the ALJ.  Specifically, Defendant asserts that at the hearing Plaintiff's attorney represented to the ALJ that the record was complete, and he cannot now argue reversible error based on the ALJ's acceptance of his attorney's representation.  Further, Defendant argues that even after the administrative hearing, Plaintiff's counsel merely argued in the request for review by the Appeals Council that the ALJ erred in the decision, and it was not based on substantial evidence in the file.  Defendant contends that Plaintiff never raised the issue that an additional psychiatric medical opinion was required to formulate the RFC findings.  Defendant contends that the proper place to seek further development of the record was before the ALJ.  (Def.'s Opp. to Pl.'s Opening Brief ("Opp.") 5, ECF No. 16.)  Defendant asserts that Plaintiff abandoned the claim that the record required further development.  (Opp. 6.)

Defendant further argues that if the Court should entertain the forfeited argument, the Court should find no error.  Defendant contends that the ALJ summarized the treatment evidence regarding Plaintiff's schizoaffective disorder in detail and addressed the opinion of Dr. Portnoff

---

[5] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

who found Plaintiff's performance on psychiatric testing to be non-credible and observed that Plaintiff was likely fabricating psychiatric/cognitive symptoms.  (Opp. 6.)  Defendant asserts that Plaintiff's argument that the ALJ lacks basis is flawed because the RFC finding is not a medical finding, but an administrative finding regarding a claimant's ability to perform basic work functions that is expressly reserved to the adjudicator.  Defendant argues it is the ALJ's obligation to consider the evidence and determine how consistent various opinions are with the evidence and decide the RFC accordingly.  (Opp. 7.)  Defendant asserts that the ALJ's findings are well grounded in the treatment evidence and the ALJ considered all the evidence in concluding that Plaintiff's schizoaffective disorder was sufficiently managed to permit him to perform a variety of unskilled work.  (Opp. 7-8.)

Plaintiff replies that Defendant is ignoring that judicial review also requires a determination as to whether the ALJ used the correct legal standard in adjudicating Plaintiff's claim and that the ALJ failed to correctly apply the legal standards.  (Pl.'s Reply 2 ("Reply" 2, ECF No. 17.)  Plaintiff argues that the ALJ had no medical opinion from which to make his mental RFC determination and the lack of a medical opinion from which the ALJ could make his determination renders the ALJ's findings flawed.  (Reply 3.)  Further, Plaintiff contends that the ALJ has an independent duty to fully and fairly develop the record and assure that the claimant's interests are considered.  Plaintiff states that the ALJ made findings regarding Plaintiff's mental impairment based on medical opinions that were of no value because they issued prior to his suicide attempts, treatment at Fresno Behavioral Health, and involuntary psychiatric hospitalization.  (Reply 3-4.)

1.   Legal Standard

A claimant's RFC is "the most [the claimant] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).  The RFC is "based on all the relevant evidence in [the] case record."  20 C.F.R. § 416.945(a)(1).  "The ALJ must consider a claimant's physical and mental abilities, § 416.920(b) and (c), as well as the total limiting effects caused by medically determinable impairments and the claimant's subjective experiences of pain, § 416.920(e)."  Garrison v. Colvin, 759 F.3d 995, 1011 (9th Cir. 2014).  At step four the RFC is used to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work.

1  Garrison, 759 F.3d at 1011.  "In order for the testimony of a VE to be considered reliable, the
2  hypothetical posed must include 'all of the claimant's functional limitations, both physical and
3  mental' supported by the record."  Thomas, 278 F.3d at 956.

4      When applying for disability benefits, the claimant has the duty to prove that he is
5  disabled.  42 U.S.C. § 423(c)(5)(A).  The ALJ has an independent "duty to fully and fairly develop
6  the record and to assure that the claimant's interests are considered."  Widmark v. Barnhart, 454
7  F.3d 1063, 1068 (9th Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).
8  The ALJ has a duty to further develop the record where the evidence is ambiguous or the ALJ
9  finds that the record is inadequate to allow for proper evaluation of the evidence.  Mayes v.
10  Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th
11  Cir. 2001).  A specific finding of ambiguity or inadequacy in the record is not required to trigger
12  the necessity to further develop the record where the record itself establishes the ambiguity or
13  inadequacy.  McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011).

14      2.   Analysis

15      Plaintiff argues that the opinions of the agency physicians and consultative examiner
16  regarding his mental capacity do not provide substantial evidence to support the RFC finding and
17  the ALJ failed in his duty to further develop the record.   Initially, it is Plaintiff's duty to present
18  evidence of disability and the absence of a report from a treating or examining physician does not
19  give rise to the duty to further develop the record, the duty is triggered only where the record is
20  ambiguous or inadequate.  Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir.2005); Findley v. Saul,
21  No. 1:18-CV-00341-BAM, 2019 WL 4072364, at *6 (E.D. Cal. Aug. 29, 2019).  It is undisputed
22  that Plaintiff did not present an opinion regarding his functional abilities from any treating provider.

23      The ALJ considered that Plaintiff had a psychological consultative examination on February
24  1, 2019, with Dr. Portnoff.  (AR 29-30.)  Dr. Portnoff noted that Plaintiff was a suspect historian.
25  (AR 445.)   Plaintiff complained of depressive symptoms, low motivation, and auditory
26  hallucinations telling him to hurt others.  (AR 29, 446.)  Dr. Portnoff opined he was unable to
27  determine if Plaintiff has genuine psychiatric or cognitive symptoms, or sufficient credible data
28  upon which to base a diagnosis or compute reliable ratings.  (AR 29, 451.)  Dr. Portnoff opined that

Plaintiff could perform simple, repetitive tasks.  (AR 29, 451.)  However, Dr. Portnoff, by default, opined that Plaintiff had no mental limitations in performing detailed and complex tasks, accepting instructions from supervisors, interacting with coworkers and the public, working on a consistent basis without special or additional instruction, maintaining regular attendance in the workplace from a psychological standpoint, completing a normal workweek or workday without interruption from a psychological standpoint, and dealing with the stress encountered in a competitive work environment.  (AR 29, 451.)

The ALJ was not persuaded by Dr. Portnoff's opinion, as it was inconsistent with the medical evidence.  (AR 29, 451.)  The ALJ noted that Dr. Portnoff's opinion was written prior to Plaintiff's treatment at Fresno Behavioral Health.  (AR 29.)  She also found that Dr. Portnoff noted that Plaintiff reported symptoms of PTSD and depression, and also noted that Plaintiff "never availed himself of any mental health treatment." (AR 29, 451.)  Dr. Portnoff also noted Plaintiff's non-credible test performance during the examination. (AR 30, 451.)  During the examination, Plaintiff indicated he "did not know" answers to who the current U.S. president is, where the Statue of Liberty is located and how many legs a dog has.  Moreover, Plaintiff provided wrong answers as to what color the grass is and how much change he would get back when answering a simple math computation question.  Dr. Portnoff noted that Plaintiff had adequate concentration, persistence, and pace. (AR 30, 447.)  Plaintiff was administered the Wechsler Adult Intelligence Scale, 4th edition, test, and the Wechsler Memory Scale, 4th edition, test.  (AR 30, 448-51.)  Dr. Portnoff noted that Plaintiff made non-credible efforts during testing, with most subtests achieving a zero raw score. (AR 30, 448.)  As an example, the ALJ noted, when asked what is the next day after Monday, he said "Thursday."  When asked to count 3 flowers on a page, he made a dramatic show of using his fingers and laboriously counting to get the total, but was unable to count six items, or to add 4 plus 4.  Dr. Portnoff noted that in the context of non-credible effort, the results are considered invalid.  (AR 30, 448.)

Initially, the Court considers Defendant's argument that Plaintiff waived the challenge regarding the lack of a medical opinion as to his mental limitations by failing to raise it below. "[W]hen claimants are represented by counsel, they must raise all issues and evidence at their

administrative hearings in order to preserve them on appeal," otherwise, the issue will be deemed waived. Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (rejecting brand new challenge to VE testimony as waived because, in proffering statistical evidence for the first time on appeal, the claimant deprived the Commissioner of an opportunity to evaluate that evidence, which the "ALJ, rather than this Court, was in the optimal position" to do, thus prejudicing the Commissioner).

As Defendant argues, at no point during the administrative hearing or before the Appeals Council did Plaintiff raise the issue that a further psychiatric consultative examination was necessary to adjudicate his claim. At the November 29, 2021 hearing, Plaintiff's counsel asserted that she had reviewed the record and there were no other exhibits needed to be admitted in to the record. (AR 44.) At the close of the hearing, the ALJ asked if there was anything further. Plaintiff's counsel stated, "No, Your Honor." The ALJ stated that he was ready to close the record and the hearing was adjourned. (AR 71.)

Upon request for review by the Appeals Council, Plaintiff's counsel asserted, "The Administrative Law Judge erred in the decision. It is not based on the substantial evidence in the file." (AR 259.) Plaintiff's appeals council brief stated,

> I am the appointed representative for the above-named individual in matters pertaining to the claimant's claim for Supplemental Security Income (SSI) and Social Security Disability (SSDI) benefits. I am respectfully requesting that the Appeals Council review the Hearing Decision of the Administrative Law Judge (ALJ) Jan Leventer in the decision dated December 10, 2021. I am requesting that you review this case based on errors of law regarding the existing evidence and facts in the exhibit file.
>
> The ALJ committed errors warranting a review in this case. Specifically, the ALJ committed errors as a matter of law in: (1) failing to consider the impact and severity of the claimant's physical and mental impairments and limitations over the entire period; and (2) failing to even discuss, much less consider, the effect of the claimant's limitations and the claimant's overall capabilities when considering all of this claimant's impairments and significant functional limitations, which began at the claimant's onset date and continued through to the present. I respectfully request that the Appeals Council remand the case back for further review by the ALJ.

(AR 385-86).

In Randolph v. Saul, No. 2:18-CV-00555-CLB, 2020 WL 504667, at *8 (D. Nev. Jan. 31, 2020), the court rejected a challenge that the ALJ failed in his duty to further develop the record due to a purported gap in the treatment records. The claimant argued that there was no evidence of treatment until more than a year after her purported onset date and then only three visits that

following year.  The court found there was no basis to further develop the record due to the gap in treatment because the record was neither ambiguous nor inadequate.  Randolph, 2020 WL 504667, at *8.  Further, the Court found that at the end of the hearing, the ALJ specifically asked the claimant's counsel if the record was complete and counsel stated yes, except if EEG results were received before the decision was reached.  Id.; see also Ryan Patrick A. v. Berryhill, No. EDCV 17-2526-JPR, 2019 WL 1383800, at *8 (C.D. Cal. Mar. 27, 2019) (claimant waived argument that consultative examination was required by failing to raise it before the ALJ or the Appeals Council).  The Court would agree given the record here Plaintiff has waived the argument that a further consultative examination was required by failing to raise the issue before the ALJ or the Appeals Council.

However, in his reply, Plaintiff argues that there was no medical review of records after the alleged worsening of his schizoaffective symptoms in January 2020, and the ALJ could at a minimum have had an agency physician review the recent records to issue an opinion on his mental limitations.  (Reply 17.)  The record shows that the prior administrative finding on February 19, 2019, by Dr. Meenakshi found there was insufficient evidence to evaluate the claim of mental impairment.  (AR 83.)  Similarly, on May 28, 2019, Dr. Collado made the same finding.  (AR 104.)  As discussed above, Dr. Portnoff's findings were based on what he found to be noncredible attempts during the consultative examination.   Dr. Portnoff stated Plaintiff is "probably fabricating psychiatric/cognitive symptoms."   (AR 448.)   Dr. Portnoff found that due to Plaintiff's "noncredible" effort the results of testing conducted were invalid.  (AR 448.)   As to Plaintiff's mental limitations, Dr. Portnoff stated,

> Krywan King claims a history of childhood learning disabilities and ADHD. However, he worked for seven years in fast food before he stopped, allegedly due to eye issues (not cognitive or psychiatric issues).  He reports symptoms that might be reflective of depression or PTSD, but he has never availed himself of any mental health treatment.   In addition, because of his completely non-credible MSE and test performance (e.g. says a dog has 3 legs), I am unable to endorse any of his reported symptoms or history, since they must also be considered suspect.

> Whether or not he actually has any genuine psychiatric or cognitive symptoms beneath today's presentation or to what degree is not a question I can answer.  I have no credible data upon which to base a diagnosis or to compute reliable MSS ratings.  By default, the MSS is without limitations.

1  (AR 451.)

2  The ALJ considered that on January 18, 2020, Plaintiff cut his left arm and was received at

3  Exodus Recovery Crisis Stabilization Center.  (AR 25.)  Plaintiff reported suicidal ideation of

4  walking in front of a moving vehicle or cutting his wrist with a knife.  He reported auditory

5  hallucinations telling him to kill himself.  On evaluation, he was found to be calm and cooperative

6  with a flat affect.  (AR 25, 459).  Plaintiff was brought in by ambulance for evaluation of a 5150

7  hold[6] and had approximately 25-50 open cuts on his arms.  (AR 459.)  The ALJ noted that treatment

8  notes document compliance with inpatient treatment, and he was discharged January 19, 2020.

9  (AR 25, 463.)  The ALJ found on discharge, Plaintiff denied suicidal ideation and auditory and

10  visual hallucinations, and he had good insight and judgment.  He was oriented to person, place,

11  time, and situation.  His speech was coherent, and he displayed intact memory.  (AR 25, 461.)

12  However, while the ALJ found that the record notes that Plaintiff denied visual hallucinations the

13  record was positive for auditory hallucinations.  (AR  461.)  Plaintiff was diagnosed with mood

14  disorder, not otherwise specified.  (AR 25, 462.)  On discharge, he was provided a referral for

15  outpatient treatment.  (AR 25, 464.)

16  Plaintiff was seen by Fresno County Mental Health on January 18, 2020, after discharge

17  complaining of delusional thoughts and feelings of worthlessness. (AR 25, 498.)  He complained

18  of suicidal thoughts following the death of his mother several months prior.  (498.)  Examination

19  showed Plaintiff was cooperative, with calm behavior, normal speech, and sad mood. (AR 25, 499.)

20  He was oriented to person, place, and time; he had a rational thought process; and fair immediate,

21  short-term, long-term, and recent memory, abstraction, judgment, and insight.  (AR 25, 499-500.)

22  He had average intelligence.  (AR 25-6, 500.)  Diagnoses were major depressive disorder, recurrent,

23  unspecified, and paranoid delusional disorder.  (AR 26, 500.)  At this visit, it is noted that Plaintiff

24  had paranoid delusions, auditory hallucinations, and illusions.  (AR 499.)  His thought content was

25  helpless/hopeless, suicidal, and worthless.  (AR 500.)

26

27  ───────────────
[6] Under section 5150 of the California Welfare and Institutions Code, a per who is danger to themselves or others
or is gravely disabled, due to a mental health disorder can be taken into custody for up to 72 hours for assessment,
28  evaluation, and crisis intervention.  Cal. Welf. & Inst. Code § 5150(a).

Plaintiff contacted Fresno County Mental Health on July 24, 2020, seeking medication management.  (AR 489.)  He was not taking any medication and there is documentation that he did not follow up with treatment after his January hospitalization.  (AR 26, 494.)  He reported daily auditory and visual hallucinations with voices telling him to hurt other people and that he was worthless, delusional paranoia, sometimes feels special powers, and the television talking to him. He also reported difficulty sleeping and concentrating and denied suicidal ideation. (AR 26, 491, 494.)  Examination shows impaired memory, normal speech and orientation, and organized thought process.  His mood was depressed, anxious and irritable and affect was blunted.  Intelligence is noted to be below average.  (AR 492.)   The record also notes that Plaintiff had coherent thought process; fair immediate recall, recent and long and short-term memory; and fair insight and judgment. (AR 26, 495-96.)  The diagnosis was schizoaffective disorder, depressive type.  (AR 26, 496.)  Plaintiff received prescriptions for Abilify 5 mg, one tablet daily; Benztropine Mesylate 0.5 mg, one tablet twice daily; and Trazodone Hydrochloride 50 mg, TAB, one tablet daily.  (AR 26, 493.)

The ALJ noted that treatment notes document a lapse in treatment from July 28, 2020, through August 31, 2020, with the treatment provider calling Plaintiff and leaving messages as well as mailing a letter to Plaintiff's address.  (AR 26, 484, 486, 487.)

On September 22, 2020, Plaintiff resumed telehealth treatment at Fresno County Mental Health.  Treatment notes document Plaintiff was doing well on medication, other than having a headache with the trazodone.  He denied depression, paranoia, or hallucinations, he was in good spirits, and it is noted that he was laughing and playing with his children. Examination showed cooperative behavior, alert sensorium, normal cognition, speech, orientation, and thought content and process. Plaintiff had a normal mood and average intelligence.  (AR 26, 478.)  Insight and judgment are noted to be impaired.  (AR 478.)   The diagnosis was schizoaffective disorder, depressive type.  He was prescribed consisted of Abilify 15 mg, one tablet daily; Benztropine Mesylate 0.5 mg, one tablet by mouth twice daily; Lexapro 20 mg, one tablet daily; and Trazodone Hydrochloride 100 mg, TAB, one tablet daily.  (AR 26, 479.)

Plaintiff was seen by Fresno County Behavioral Health on October 20, 2020, and reported

he was easily frustrated, had difficulty sleeping, and was having hallucinations.  The ALJ found that treatment notes document he was "out of his medications," however, the record notes that he is hallucinating and depressed without medication and his mood is doing well with medication. (AR 26, 476.)  Plaintiff's medication was increased. (AR 26, 476.) Examination was unremarkable except that his insight and judgment are noted to be impaired.  (AR 476.)

Plaintiff failed to show for an appointment on November 17, 2020. (AR 474.)  On November 20, 2020, the notes report Plaintiff is having trouble accepting his illness and his limitations working.  He needs disability.  He wants to work but only gets in trouble and almost had a fight the day prior. The record notes he is compliant with his medication, and examination notes remain the same.  (AR 472.)   At this visit, it was documented that he misses appointments and "maybe even taking his medication."  (AR 26, 473.)

On December 24, 2020, Plaintiff was caught screaming at his girlfriend in front of their children.  He was encouraged to walk if he felt frustrated.  (AR 470.)   Mental status examination remained the same with cooperative behavior; alert sensorium; normal cognition, speech, orientation, thought content, and mood, and average intelligence.  (26, 470.)

In 2021, Plaintiff continued medication management at Fresno County Behavioral Health. He missed appointments on March 16, 2021, and April 19, 2021.  (AR 26, 521, 523.)  The ALJ found that the treatment notes document medication noncompliance, but there are no such findings on the cited records.  Further, the ALJ noted mental status findings from these visits, but the records clearly state "Patient is a no show. Please disregard rest of the note below.  (AR 521, 523.)

Plaintiff was seen for a telehealth office visit on May 21, 2021, and reported he ran out of medication two weeks earlier.  He complained of irritability, difficulty sleeping, and depression. He also reported having auditory and visual hallucinations and that his medications were partially helpful.  (AR 519.)  He denied suicidal ideation.  Examination findings showed cooperative behavior and alert sensorium, although he was noted as a poor historian and demonstrated cognitive deficits.  Further, Plaintiff had brief, comprehensible, limited spontaneity in speech, and a partially circumstantial thought process with hallucinations.  Plaintiff had a calm affect. (AR 27, 519.)   His intelligence was noted to be below average, and his insight and judgment were impaired.  (AR 519.)

1   Plaintiff was future-oriented and was not assessed at risk of harm to himself or others.  (AR 27,
2   520.)

3       On June 25, 2021, Plaintiff reported he felt "okay." He stated he was having auditory and
4   visual hallucinations but was unable to elaborate.  (AR 27, 517.)  His wife reported that he was
5   having anger problems and talking to himself.  (AR 517.)  Mental status examination remained the
6   same, except thought processes were delayed.  (AR 27, 517.)  Diagnosis was the same, and
7   medication was changed from Abilify to Zyprexa due to psychotic symptoms and anger. Plaintiff
8   was future-oriented and assessed not at risk of harm to himself or others.  (AR 27, 518.)

9       On July 28, 2021, Plaintiff reported he wanted to "take a bunch of pills or cut his throat."  He
10  was taken by EMS to Exodus Recovery.  He reported suicidal thoughts, and auditory and visual
11  hallucinations.  He reported voices telling him to hurt others or himself.  Plaintiff reported he was
12  accused of spying on his daughter by camera.  He reported medication was not strong enough and
13  does not help.  He reported that he takes medication, but he was not able to name the medications.
14  He was reluctant to talk to the nurse about what leads to suicidal thoughts, nor did he provide other
15  information.  He did not know time or place when asked.  Mental status examination showed he
16  was oriented to person and situation, and he had normal speech, calm mood, normal thought
17  process, adequate insight, and intact judgment.  Plaintiff displayed an anxious mood and sad affect,
18  and had appropriate behavior and thought content.  (AR 27, 527.)  Diagnosis was schizoaffective.
19  disorder and he was transferred to the hospital.  (AR 27, 529, 531.)

20      Plaintiff was admitted to Freemont Hospital from July 31, 2021, to August 4, 2021, due to
21  depression and suicidal ideation.  Treatment notes document Plaintiff was very upset and reported
22  a family member told him she suspected he was spying on her with a camera.  He also complained
23  of visual and auditory hallucinations.  (AR 27, 533.)  He was quite paranoid and delusional.  (AR
24  533.)  Treatment diagnosis consisted of schizoaffective disorder, bipolar type.  (AR 27, 535.)  He
25  was administered a combination of Zyprexa, Cymbalta, and Remeron. Plaintiff reported the
26  medication improved his symptoms.  Plaintiff's sleep and appetite were good, and he had no side
27  effects.   Discharge notes document that at the time of discharge, he displayed appropriate
28  appearance, engaged behavior, normal speech rate and rhythm, improved motor activity, bright

affect, appropriate thought process, fair insight and judgment, and no suicidal ideation.  Plaintiff was alert and oriented to person, place, and time.  (AR 27, 534.)  He endorsed auditory hallucinations and paranoid type delusions.  (AR 534.)  He was discharged with prescriptions for Zyprexa 20 mg, Trazodone 100 mg, Cymbalta 60 mg, and Remeron 30 mg.  Notes document that at discharge, Plaintiff was doing fairly well, he had no noted behavior problems, and he was independently performing activities of daily living.  (AR 27, 535.)

The ALJ found that despite not taking medication consistently, the treatment record reflects that Plaintiff has no more than moderate restrictions interacting with others and adapting and managing himself, and mild limitations in understanding, remembering, and applying information, and concentrating, persisting, and maintaining pace.  (AR 27.)  After considering the treatment record, the ALJ stated that she accounted for Plaintiff's schizoaffective disorder with limitations in the residual functional capacity, including simple, routine tasks, but not at a production-rate pace, maintaining attention and concentration throughout the workday, frequently interact with supervisors, coworkers and the public, and frequently adapt to change and stress in the workplace. (AR 28.)  However, no physician has reviewed any of the treatment record for Plaintiff's mental health issues.   Further, the physicians that did offer opinions did so prior to Plaintiff's admission as a 5150 and subsequent mental health treatment.

Review of the record shows that Plaintiff's symptoms worsened after the medical opinion and prior administrative findings in the record.  Plaintiff began receiving mental health treatment and objective findings do show that his symptoms improved with medication, although he is inconsistent with attending treatment and medication compliance.  Further, the medical record does record impaired judgment and insight while on his medication.  The Court finds that substantial evidence does not support the mental RFC and this matter shall be remanded.  On remand, the mental health records from Plaintiff's admission in January and the continuing treatment for his mental health issues in the record shall be reviewed by a medical professional to issue an opinion on Plaintiff's mental limitations.

**B.    Lay Witness Testimony**

Plaintiff contends that the ALJ erred by failing to provide germane reasons to reject the

testimony of Ms. Arnold, his girlfriend.  Plaintiff states that his third party witness' statement directly contradicts the ALJ's findings and undermine the RFC determination.  (Mot. 24.) Specifically, Plaintiff argues that the ALJ found him to have a limited education, but the witness stated that he cannot read or write more than his own name which under the regulations would mean he is illiterate.  Further, Plaintiff argues that the ALJ specifically found that he can read despite this contradiction in the testimony.  (Mot. 25.)  Plaintiff asserts that the jobs identified by the ALJ require a reading level at a rate of 190-215 per minute.  Further, Plaintiff contends that the testimony regarding his inability to get along with others undermines the ALJ's conclusion that he can interact with co-workers, the public and supervisors for two-thirds of a workday.  (Mot. 26.)

Defendant counters that much of the testimony of Plaintiff's girlfriend was accommodated by the RFC findings.  Defendant contends that to the extent that Ms. Arnold testified to greater limitations, the ALJ did not err in failing to articulate his consideration of the evidence.  Defendant asserts that the revised regulations abrogated the prior case law requiring the ALJ to provide germane reasons to reject lay witness testimony.  Defendant contends that the revised regulations contain no directive that ALJ's must articulate reasons for how they value evidence from nonmedical sources.  (Mot. 9.)  Defendant argues that the same reasons the ALJ articulated for rejecting Plaintiff's statement also apply to the testimony of Ms. Arnold as her statements described the same limitations and symptoms as Plaintiff testified.  (Mot. 10.)

Plaintiff replies that there are no provisions in the new regulations that unambiguously remove the ALJ's obligation to address lay witness testimony and therefore the ALJ must provide germane reasons to discount lay witness testimony.  Further, Plaintiff states that this issue does not even need to be reached here because the issue is whether the ALJ even considered the lay witness testimony.  (Reply 6.)  Plaintiff contends that the error is not harmless because Ms. Arnold provided probative testimony regarding his mental impairments that is not duplicative of Plaintiff's statements and had her statements been credited a different conclusion could have been reached.

### 1.   Legal Standard

The Ninth Circuit has held that "[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard

such testimony and gives reasons germane to each witness for doing so." Tobeler v. Colvin, 749 F.3d 830, 832 (9th Cir. 2014) (citations omitted); see also Molina, 674 F.3d at 1111.  In giving "germane reasons" for disregarding a lay witness's testimony, the ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2) (standard for evaluating opinion evidence for claims filed before Mar. 27, 2017); see also Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (germane reasons must be specific).

Nevertheless, even if the ALJ fails to provide germane reasons for rejecting lay witness testimony, such error is harmless "when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).  More specifically, the Ninth Circuit has held an ALJ's error in failing to explain his reasons for disregarding lay testimony is harmless where the reasons for rejecting a claimant's symptom testimony apply equally to third-party lay witness testimony.  Molina, 674 F.3d at 1115; see also Valentine v. Astrue, 574 F.3d 685, 694 (9th Cir. 2009) (ALJ's valid reasons for rejecting claimant's testimony were equally germane to similar lay testimony); Lewis, 236 F.3d at 512 (stating that the ALJ "noted arguably germane reasons for dismissing the [lay] testimony, even if he did not clearly link his determination to those reasons"); see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (approving ALJ's dismissal of daughters' lay testimony on the basis that they were merely repeating the claimant's statements, where daughters' statements did not explain sufficiently when and to what extent they had the opportunity to observe their mother).  As the Court previously noted, Plaintiff bears the burden of showing that the error is not harmless. Shinseki, 556 U.S. at 409.

However, the Ninth Circuit has cautioned that lay testimony "cannot be disregarded without comment."  Stout, 454 F.3d at 1053.  Specifically, the Ninth Circuit held that "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no

reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Id. at 1055–56. Thus, the Ninth Circuit has refused to apply the harmless error standard where an ALJ failed to comment on lay testimony. Id. at 1056.

Meanwhile, the new regulatory framework, which applies to claims filed, as here, after March 27, 2017, appears to be consistent with this Ninth Circuit principle. That is, the revised regulations appear to hold the same requirement that lay witness testimony be considered. In short, the revised regulations identify five categories of evidence: (1) objective evidence; (2) medical opinions; (3) "other" medical evidence; (4) evidence from nonmedical sources; and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)–(5). Regulation 416.920c describes how the ALJ is required to consider and articulate medical opinions and prior administrative medical findings. However, with respect to evidence from nonmedical sources—the category under which Plaintiff's lay testimony falls—the revised regulations expressly provide that the agency is "not required to articulate how we considered evidence from nonmedical sources using the requirements [set forth] in paragraphs (a) through (c) in this section." 20 C.F.R. § 416.920c(d). Based on a plain reading of the revised regulations, the Court concludes the new regulatory framework requires an ALJ to consider lay testimony but does not necessarily require him to articulate how he considered it.

Thus, the requirements under the new regulatory framework for discussing lay witness testimony appear strikingly similar to the requirements set forth under Ninth Circuit precedent for establishing the harmless error standard. Accordingly, the Court's analysis under either the new regulatory framework advanced by Defendant or the "germane reasons"/harmless error standard presented by Plaintiff results in the same conclusion in the instant matter.

2.   Analysis

Defendant does not contend that the ALJ addressed the testimony of Ms. Arnold in the opinion but argues that the ALJ accommodated much of the testimony of Ms. Arnold in the RFC findings by concluding that Plaintiff was more limited than any doctor opined regarding psychiatric limitations. Review of the ALJ's opinion does not show any discussion regarding Ms. Arnold's testimony. As discussed above, the regulations require the ALJ to consider lay witness testimony

and here, the Court agrees with Plaintiff that it is not evident that the ALJ considered Ms. Arnold's testimony in this matter.

Accordingly, the issue is whether the error was harmless.  Latosha Arnold completed a third-party function report on April 2, 2019.  (AR 339-47.)  She stated that she had known Plaintiff for ten years and spent every day with him.  (AR 339.)  From the time he wakes up until he goes to bed, Plaintiff sits, lays down, and walks to the mail.  He mostly lays down and complains about his back and feet and that he is not a man anymore.  Plaintiff helps Ms. Arnold to remember to take her medication, helps her with the kids when she cleans the house or gets groceries.  Plaintiff has bad hygiene, and she will give him a bath at times, but sometimes he does not want to be touched.  She shaves his hair and beard.  When she is not home to cook, Plaintiff will make sandwiches.  (AR 340.)

Plaintiff needs reminders to take his medication, but not because he is forgetting, he just does not want to take them because he is afraid of being in pain.  Plaintiff prepares sandwiches monthly. He does not prepare meals because he cannot do anything very long without being in pain.  Plaintiff helps to care for the kids while she cleans.  He will watch them for up to an hour if the older children cannot help.  He needs encouragement when he goes to "dark places" and thinks he is nothing.  She will tell him that he is something, they make each other strong, and a good dad is a lot more than buying stuff.  (AR 341.)

Plaintiff does not do house or yard work because he is always in pain.  He goes outside three to five times per month when she makes him walk to the mailbox or garage.  He travels by walking or riding in a car.  He can go out alone, but she does not trust the way he thinks.  He does not drive because he cannot read to pass the test.  He uses the computer to shop for whatever they need.  It can take him a week to make a full order or an hour and a half to get items the same day.  He is able to pay bills.  (AR 342.)

His hobby is complaining, and he is really good at it.  He spends time with her and the children.  Sometimes they stay in the room or garage all day.  He does these one to two times per week.  On a regular basis, he goes to a room or the garage and sometimes to the mailbox to get mail but will end up in the garage after that.  He needs to be reminded to go places and will only leave

1   when required.  He needs someone to accompany him, and she will go with him and the kids, so

2   they do not get lost or in case he needs help.  (AR 343.)

3       Plaintiff has problems getting along with others and they barely get along, but they need each

4   other.  He does not like strangers and says the strangers are against them.  He does not like people

5   to look at his eye.  Ms. Arnold made him a Facebook page, but he does not get on it.  Plaintiff's

6   conditions affect lifting, squatting, bending, standing, reaching, walking, sitting, talking, seeing,

7   completing tasks, concentration, following instructions, and getting along with others.  He can walk

8   about two to three blocks before needing to rest for ten to fifteen minutes.  He can pay attention for

9   three to ten minutes.  He cannot read.  He can follow spoken instructions but just needs to be spoken

10  to carefully because he will get mad over something and refuse to comply.  (AR 344.)

11      Plaintiff does not care about authority figures and does not want them to tell him what to do.

12  He does not handle stress well.  Ms. Arnold almost had to call mental health on Plaintiff but

13  threatened that she would not see him again if she did, so she did not call.  He likes routine and

14  does not like it when something changes suddenly.  Plaintiff locks her out of the house, and she is

15  afraid that he is going to kill himself.  He uses a cane when they walk to the bus or store, but it was

16  not prescribed by a doctor.  (AR 345.)

17      She has tried to help him get a job, but no one will hire him.  (AR 346-47.)  She tried to help

18  him to read and write more than his name, but he gave up.  He has been trying to get a job for three

19  years and, when he does get an interview, they say his eye is a health hazard because it can leak

20  into the food.  Plaintiff asked her to kill him a year ago.  (AR 347.)

21      Ms. Arnold's testimony regarding Plaintiff's difficulty in getting along with others, paranoia,

22  and fear that Plaintiff will kill himself is substantially the same as Plaintiff's testimony that was

23  considered by the ALJ.  The ALJ considered that Plaintiff testified he did not like being around

24  other people and did not get along with neighbors and friends.  (AR 22.)  The ALJ also considered

25  Plaintiff's suicidal ideation of wanting to walk in front of a car or cut himself or take a handful of

26  pills or cut his throat, and auditory hallucinations telling him to kill himself.  (AR 25, 27.)  During

27  the hearing, Plaintiff testified that he hears voices telling him to hurt himself.  (AR 56.)  He might

28  cut his wrist or something, but he has not had that happen for a few months.  (AR 57.)  He also

1   testified that he gets angry and lashes out at people and had hit his uncle when his uncle said

2   something he did not like.  (AR 58.)

3        Plaintiff argues that Ms. Arnold reports that he cannot read or write more than his name and

4   that she reads things for him.  (Mot. 24, 347.)  Defendant counters that the failure to address Ms.

5   Arnold's statement is harmless as the record does not support her statement.  Plaintiff certified that

6   he could read and understand English when he applied for benefits (AR 308), he filed out his own

7   exertion questionnaire on September 12, 2019 (AR 358-60) and his own work history report (AR

8   318-29), and he reported prior work as a fast food worker that according to the DOT requires

9   reading 190-215 words per minute.  (Opp. 10.)  However, as Plaintiff replies, Defendant's post hac

10  rationalization is irrelevant as the Court cannot affirm on reasons that were not articulated by the

11  ALJ.  In evaluating the opinion, the Court is constrained to review the reasons asserted by the ALJ.

12  Connett, 340 F.3d at 874 ("It was error for the district court to affirm the ALJ's credibility decision

13  based on evidence that the ALJ did not discuss.").

14       The ALJ considered Plaintiff's testimony that he had difficulty reading.  (AR 24.)  During

15  the hearing, Plaintiff testified that he was unable to read due to his eyesight.  (AR 46.)  He does not

16  use reading glasses because he cannot afford them.  (AR 47.)  However, Ms. Arnold stated that

17  Plaintiff is unable to read or write more than his name and was unable to pass the driver's test

18  because he cannot read.  It is not clear that the ALJ considered this testimony and if accepted this

19  would impact the RFC and the jobs that the VE opined Plaintiff was able to perform.

20       Accordingly, the Court finds that the ALJ erred by failing to consider the testimony of Ms.

21  Arnold and this action shall be remanded for consideration of her third-party statement.

22                                    **V.**

23                            **CONCLUSION AND ORDER**

24       In conclusion, the Court finds that the ALJ erred failing to consider the testimony of Ms.

25  Arnold and the mental RFC is not supported by substantial evidence.

26       Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the

27  Commissioner of Social Security is GRANTED and this matter is remanded back to the

28  Commissioner of Social Security for further proceedings consistent with this order.  It is FURTHER

ORDERED that judgment be entered in favor of Plaintiff Krywan King and against Defendant Commissioner of Social Security.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:  **March 25, 2024**

_____
UNITED STATES MAGISTRATE JUDGE